UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
MARCUS COSSETTE,

                                        Plaintiff,

        - against -                                    **OPINION & ORDER**

CORRECTION OFFICER EDWARDS,                            No. 20-CV-6427 (CS)
SERGEANT PAVEZ, DR. MALVAROSA,
CORRECTION OFFICER WILLIAMS and
DEPUTY BURNETT,

                                        Defendants.
-------------------------------------------------------------x

Appearances:

Marcus Cossette
Stormville, New York
*Pro Se Plaintiff*

John R. Doran
Assistant Attorney General
Office of the Attorney General of the State of New York
New York, New York
*Counsel for Defendants*

Seibel, J.

        Before the Court is the unopposed motion to dismiss of Defendants Correction Officer

Madison Edwards, Sergeant Arnaldo Pavez, Dr. Mario Malvarosa,[1] Correction Officer Lamont

Williams and Superintendent Edward Burnett.  (ECF No. 57.)  For the following reasons, the

motion is GRANTED.

---

[1] Dr. Malvarosa's name was spelled "Malverosa" in Plaintiff's complaints.  (ECF No. 43
("TAC") ¶ 7; ECF No. 56 ("FAC") ¶ 7.)  The Court adopts the spelling used by Dr. Malvarosa's
counsel.

I.     **BACKGROUND**

I accept as true the facts, but not the conclusions, set forth in Plaintiff's Fourth Amended Complaint, (FAC), Third Amended Complaint, (TAC), Second Amended Complaint, (ECF No. 30 ("SAC")), Amended Complaint, (ECF Nos. 5-6 ("AC")), and Initial Complaint, (ECF No. 1 ("IC")).  *See Washington v. Westchester Cnty. Dep't of Corr.*, No. 13-CV-5322, 2015 WL 408941, at *1 n.1 (S.D.N.Y. Jan. 30, 2015) (court may give *pro se* plaintiff the benefit of considering facts in original complaint even if they have not been repeated in amended complaint).[2]

A.     **Factual Background**

1.     **Alleged Assault**

Plaintiff is incarcerated in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS").  (FAC ¶ 3.)[3]  On August 20, 2019, Plaintiff arrived at Downstate Correctional Facility ("Downstate") in Fishkill, New York from the Oneida County Correctional Facility, where he had been in protective custody due to threats of physical harm. (*Id.* ¶¶ 3, 9.)  At Downstate, Plaintiff was not placed in protective custody, which was against his will.  (*Id.* ¶ 9.)[4]

On August 28, 2019, Plaintiff was locked in his cell and allegedly "in clear view of the bubble where the officer in charge/shift in that housing unit," who apparently was Defendant Williams, was located.  (*Id.* ¶ 10.)  A group of inmates, including two individuals named Hardy

---

[2] The Court will send Plaintiff copies of all unreported cases cited in this decision.

[3] Citations to Plaintiff's IC, AC, SAC, TAC, and FAC refer to the page numbers generated by the Court's Electronic Case Filing ("ECF") system.

[4] Plaintiff does not explain what harm he feared at Downstate.

and Watkins, had returned from recreation and were supposed to be secured in their cells before the second group was to go out for recreation, but Williams failed to ensure that the cell doors of the first group were locked.  (*Id.* ¶ 11.)  Plaintiff was in the second group but was planning to rest in his cell rather than go out for recreation.  (*Id.*)  Around 2:00pm, Hardy and Watkins allegedly yelled to Williams to "crack 27," which was Plaintiff's cell, and Williams opened it, allowing Hardy and Watkins to enter.  (*Id.* ¶ 12.)  Plaintiff woke up to see Hardy and Watkins standing over his bunk.  (*Id.* ¶ 13.)  He was cornered in his cell on his bunk and could not move. (*Id.*)  Hardy and Watkins then allegedly "used their fists to beat the plaintiff to where he could no longer move and feared that he was going to die."  (*Id.*)  Before leaving Plaintiff's cell, Hardy and Watkins allegedly told him to "clean himself up."  (TAC ¶ 13.)  They then left "as if nothing happened."  (FAC ¶ 13.)

Plaintiff alleges that after Hardy and Watkins left his cell, Williams found Plaintiff "covered in blood" while making his final round.  (*Id.* ¶ 14.)  After he finished his final round, Williams then allegedly let Plaintiff out of his cell to speak to him about what had happened. (*Id.*)  Williams allegedly made it clear to Plaintiff that "he wanted everyone to know that [Plaintiff] beat himself up" and told Plaintiff that Plaintiff "was lucky that [Williams] did not allow Hardy & Watkins to cut [Plaintiff]."  (*Id.* ¶ 15.)

Defendant Pavez then allegedly took Plaintiff to his office to discuss what had happened, and denied what Plaintiff calls "his rights to sign into protective custody where he would [be] safe from any further incidents."  (*Id.* ¶ 16.)  Pavez allegedly did not write up an incident report or have Plaintiff sign documents.  (*Id.*)

Plaintiff alleges that he was taken to the prison hospital in Downstate by Defendant Edwards.  (*Id.* ¶ 18.)  A non-defendant nurse allegedly filled out and signed a medical report and

"took photographs of his injuries," which included "left side of skull, left eye swollen and bruised, nose, jaw left side, ear left side, ribs left side, back and both upper arms." (*Id.*)  Plaintiff was given ice and ibuprofen but alleges he was denied further medical attention, pain medication, and "his daily medication." (*Id.* ¶¶ 18, 21.)

After leaving the Downstate hospital, Defendant Edwards escorted Plaintiff to a complex "away from where the assault took place," but allegedly refused to allow Plaintiff to speak to someone about being placed into protective custody, telling Plaintiff that "word would travel quick and you will be assaulted again." (*Id.* ¶ 19.)

Plaintiff was transferred to Attica Correctional Facility ("Attica") on August 30, 2019, (IC at 21), and on September 13, 2019 was determined to have broken ribs, (FAC ¶ 21).  Plaintiff allegedly suffers from long-term damage and pain, and was diagnosed with peripheral neuropathy, as a result of the assault. (*Id.* ¶ 22.)

### 2.    Facts Relating to Exhaustion

In his initial complaint Plaintiff alleged that he filed a grievance about the assault at Downstate and "completed all three steps of the grievance process," which "got him nowhere." (IC ¶ 42.)  He attached a copy of an inmate grievance form bearing his name and the date "9/27/19," but with no content and no signature. (*Id.* at 20.)  The next page appears to be a letter to "Inmate Grievance Supervisor, D. Fuller," in which Plaintiff complains about his property not arriving at Attica, his not getting programming, and the failure of anyone to assist him with his desire to file charges against the inmates who assaulted him at Downstate. (*Id.* at 21.)  The page bears some handwritten notations, including "grievant received program." (*Id.*)  He also includes a page with writing that appears intended to set forth the text of letters Plaintiff allegedly sent to Attica officials – Superintendent Noeth on September 20, 2019 and Captain S. White on

September 26, 2019 – stating that he was beaten by two inmates on August 28 at Downstate and would like to file charges against them.  (*Id.* at 19.)  Plaintiff also attached the following communications he received from DOCCS:  (1) a September 13, 2019 letter from the Bureau of Field Operations of the New York State Commission of Corrections stating that the Commission does not circumvent the grievance process, suggesting that Plaintiff file a grievance, and advising that Plaintiff could raise his medical concerns with the facility health service director or DOCCS' chief medical officer, (*id.* at 28); (2) a November 14, 2019 letter from the same office stating that the Commission had forwarded his complaint letter to the Office of Special Investigations, (*id.* at 27); (3) a November 15, 2019 memo from "Captain R. Mitchell" responding to Plaintiff's "letter to SCOC dated 10-30-19" and stating that a security supervisor had interviewed Plaintiff, referring to Plaintiff's desire to contact the state police to press charges, and providing the contact information for the state police office closest to Downstate, (*id.* at 26); and (4) a December 24, 2019 memo from the Deputy Superintendent for Security at Attica, stating that the allegation in Plaintiff's November 11, 2019 complaint was investigated and substantiated, (*id.* at 25).

In his Amended Complaint, Plaintiff alleges that "Plaintiff did file a grievance about the assault and battery by the defendants in [D]ownstate, but was denied his rights," and that "Plaintiff did file a grievance since being in Attica and the incident was still ignored and covered up."  (AC ¶ 32.)  In his Second Amended Complaint, Plaintiff states that he did not file a grievance in Downstate where the claim arose, but filed one at Attica; that it was ignored; and that he thereafter contacted the Superintendent but did not receive a response.  (SAC at 4.)  In his Third Amended Complaint, Plaintiff alleges that he "tried to file a grievance in Downstate about

the assault and battery but was denied all his legal rights," and that "[a] grievance was filed once moving to Attica but was ignored and covered up."  (TAC ¶ 27.)

In his Fourth Amended Complaint, Plaintiff again alleges that he tried to file a grievance at Downstate but was denied his rights, and that a grievance filed at Attica was ignored.  (FAC ¶ 25.)  He further describes the November 14, 2019 letter stating that his complaint was referred to the Office of Special Investigations; his meeting with officials from that office on November 21, 2019; the December 24, 2019 letter saying the allegation was substantiated; the November 15, 2019 letter with the address for the state police; his contacts with the state police; and the fact that the only documents Attica and Downstate produced to the state police regarding the assault were medical records.  (*Id.* ¶¶ 26-27.)  Plaintiff alleges that he wrote to Superintendent J. Noeth of Attica on September 20, 2019 and to Captain S. White of Attica on September 26, 2019, but "no response was ever received back in regards to the Downstate Assault."  (*Id.* ¶ 20.)  He also states, "September 27, 2019 a grievance was written, a response was not issued about the assault."  (*Id.*)

### B.    Procedural History

On January 23, 2020, Plaintiff filed his original complaint in the Western District of New York against Attica, DOCCS, Downstate, and J. Noeth, S. White, Dr. Williams, and five John Doe Defendants, in their individual capacities, alleging misuse of prison policies, denial of due process, denial of medical care in violation of the Eighth Amendment, and New York state common law negligence, assault, and battery.  (IC at 1-2.)  On April 1, 2020, that Court severed the claims relating to Downstate and (being mistaken about the location of the facility) transferred them to the Northern District of New York.  (ECF No. 4.)  Plaintiff filed his First Amended Complaint in the Western District on May 6, 2020, (ECF Nos. 5-6), against DOCCS,

Anthony Annucci, Downstate, inmates Hardy and Watkins, Deputy Burnett, Dr. Malvarosa, J. Noeth, S. White, and three John Doe Defendants – two of whom he later named as Sergeant Pavez and Officer Edwards.  (ECF No. 6 at 1-2; ECF No. 5 ¶¶ 4-10.)  By order dated June 5, 2020, the Western District struck the allegations relating to Downstate because they had already been severed and transferred to the Northern District.  (ECF Nos. 7-8.)  By order dated August 12, 2020, the Northern District transferred the Downstate-related claims to this Court.  (ECF Nos. 13-14.)

On February 17, 2021, after this Court issued a service and *Valentin* order, (ECF No. 26), Plaintiff filed his Second Amended Complaint, naming as Defendants Edwards, Pavez, and a John Doe Officer later identified as Williams.  (SAC at 1-2.)  On May 20, 2021, after the Attorney General identified Williams, (ECF No. 40), I ordered Plaintiff to submit a Third Amended Complaint naming him, (ECF No. 41), which Plaintiff did on June 8, 2021, (ECF No. 43).  In his Third Amended Complaint, in addition to Pavez, Edwards, and Williams, Plaintiff also named Deputy Superintendent Burnett and Dr. Malvarosa as Defendants.  (TAC ¶¶ 4-7.)

On October 4, 2021, Defendants filed a pre-motion letter in anticipation of their motion to dismiss, (ECF No. 53); Plaintiff responded on October 20, 2021, (ECF No. 55); and at the pre-motion conference on November 12, 2021, I granted leave for Plaintiff to amend his complaint again, (*see* Minute Entry dated November 12, 2021).  Plaintiff submitted his Fourth Amended Complaint on November 30, 2021.  (ECF No. 56.)  On January 18, 2022, Defendants filed this motion.  (ECF Nos. 57-59.)  Plaintiff never opposed the motion, and Defendants did not file a reply.

II.   **LEGAL STANDARDS**

    A.   **Motion to Dismiss for Failure to State a Claim**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (cleaned up).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679.  Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'"  *Id.* (cleaned up) (quoting Fed. R. Civ. P. 8(a)(2)).

Failure to oppose does not alone justify dismissal. *Goldberg v. Danaher*, 599 F.3d 181, 183 (2d Cir. 2010). "[T]he sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading," and if it "is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000).

## B.     Documents Properly Considered on a Motion to Dismiss

On a motion to dismiss, a court is generally confined to the four corners of the complaint, the documents incorporated in or attached thereto, documents on which the Plaintiff relied in bringing the case, and matters of which the court is entitled to take judicial notice. *See United States of America ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). But a court is permitted to consider outside documents related to exhaustion of administrative remedies and submitted by defendants under limited circumstances. *See McGee v. McGready*, No. 16-CV-4187, 2018 WL 2045094, at *2 (S.D.N.Y. Apr. 30, 2018). Those include instances where "the complaint a) was the standard *pro se* form complaint that has a check-box regarding exhaustion, b) contained allegations clearly stating that the inmate had exhausted his administrative remedies, or c) clearly pointed to the fact that the inmate had, in fact, not exhausted." *Id.* (cleaned up).

I consider the exhibits attached to Plaintiff's Initial Complaint to the extent they relate to exhaustion. (*See* IC at 25-28.) Additionally, because Plaintiff's complaints contain allegations clearly stating that he had exhausted his administrative remedies, (IC ¶ 41; AC ¶ 31; SAC at 4; TAC ¶ 26; FAC ¶¶ 24-26), I will consider the exhibits submitted by Defendants related to exhaustion – specifically, screenshots of the DOCCS inmate grievance database, (ECF No. 58-1 ("Seguin Decl.") at 25-26). *See Williams v. Annucci*, No. 16-CV-7288, 2018 WL 3148362, at *5

(S.D.N.Y. June 27, 2018) ("Here, Plaintiff explicitly states:  'I have exhausted all remedies,' which fits squarely into [the category of complaints containing allegations clearly stating that the inmate had exhausted his administrative remedies].  Therefore, this Court may properly consider the documentary evidence provided by Defendants.") (cleaned up).

Exhaustion is an affirmative defense, not a pleading requirement, and thus, inmate plaintiffs need not "specially plead or demonstrate exhaustion in their complaints."  *Jones v. Bock*, 549 U.S. 199, 216 (2007).  Instead, Defendants must demonstrate lack of exhaustion. *Colón v. N.Y.S. Dep't of Corr. & Cmty. Supervision*, No. 15-CV-7432, 2017 WL 4157372, at *4 (S.D.N.Y. Sept. 15, 2017).  "[R]elief may be granted on a Rule 12(b)(6) motion only when failure to exhaust appears on the face of the complaint."  *Jamiel v. Viveros*, No. 19-CV-1389, 2020 WL 1847566, at *3 (S.D.N.Y. Apr. 13, 2020) (cleaned up); *accord Frederic v. NFC Amenity Mgmt.*, No. 17-CV-5769, 2018 WL 4735715, at *2 (S.D.N.Y. Sept. 28, 2018) ("[E]xhaustion is an affirmative defense and as such can only be a proper basis for a motion to dismiss under Rule 12(b)(6) if failure to exhaust appears on the face of the complaint").

But where, as here, Plaintiff has explicitly stated in his complaint(s) that he has exhausted his administrative remedies, the court "may, in its discretion, convert a motion to dismiss that includes additional evidence beyond the pleadings into a motion for summary judgment." *Frederic*, 2018 WL 4735715, at *3.  Generally, a court may exercise its discretion to "convert a motion to dismiss into a summary judgment motion provided that the court gives 'sufficient notice to an opposing party and an opportunity for that party to respond.'"  *Mathie v. Dennison*, 381 F. App'x 26, 26 (2d Cir. 2010) (summary order) (quoting *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995)).  But "under certain circumstances, a court may convert a motion without giving explicit notice."  *Metrokane, Inc. v. Wine Enthusiast*, 185 F. Supp. 2d

321, 325 (S.D.N.Y. 2002).  "The essential inquiry is whether the [opposing party] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of reasonable opportunity to meet facts outside the pleadings."  *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999) (cleaned up); *see Villante v. Dep't of Corr.*, 786 F.2d 516, 521 (2d Cir. 1986); *Metrokane, Inc.*, 185 F. Supp. 2d at 325.

Here, Defendants provided Plaintiff with the notice required by Local Civil Rule 12.1, (ECF No. 59), which "is sufficient to permit conversion."  *Gottesfeld v. Anderson*, No. 18-CV-10836, 2020 WL 1082590, at *7 (S.D.N.Y. Mar. 6, 2020).  Further, the Court's notes reflect that Plaintiff was told at the pre-motion conference that in his Fourth Amended Complaint he should include any additional information that might be helpful, including if he did not have time to file a grievance or was somehow prevented from exhausting.  Therefore, as to the issue of exhaustion only, I convert the motion to one for summary judgment.

### C.   **Motion for Summary Judgment**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*  On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to "present evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (cleaned up).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). Where a declaration is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." *Id.* at 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). If "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

### D. *Pro Se* **Plaintiffs**

Submissions by *pro se* plaintiffs are to be examined with "special solicitude," *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010), interpreted "to raise the strongest arguments that they suggest," *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*) (cleaned up).  Nevertheless, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and district courts "cannot invent factual allegations" that the plaintiff has not pleaded.  *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir. 2010) (cleaned up).

*Pro se* litigants must also be afforded special solicitude "particularly where motions for summary judgment are concerned."  *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014). Where, as here, the non-moving party fails to respond to the movant's summary judgment motion, "the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (cleaned up).  "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented."  *Id.* (cleaned up).

## III.   **DISCUSSION**

### A.   **Exhaustion Under the PLRA**

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Exhaustion is required for "all

inmate suits about prison life, whether they involve general circumstances or particular

episodes." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  The PLRA mandates that a plaintiff use

"all steps that the agency holds out, and do[] so properly" – that is, in accordance with the

applicable agency rules. *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (cleaned up).

Exhaustion of available administrative remedies "must be complete prior to commencement of

suit" and "[t]he fact that a grievance is filed, or the process is completed, subsequent to

commencement of suit will not salvage an otherwise premature filing." *Chalif v. Spitzer*, No. 05-

CV-1355, 2008 WL 1848650, at *13 (N.D.N.Y. Apr. 23, 2008).

For inmates in New York State prison, administrative exhaustion involves compliance

with DOCCS's three-tiered Inmate Grievance Process ("IGP"), in which (1) the inmate must file

a grievance with the Inmate Grievance Resolution Committee ("IGRC") within twenty-one days

of the alleged occurrence, (2) the inmate must then appeal an adverse decision by the IGRC to

the superintendent of the facility within seven days after receipt of the IGRC's response, and

(3) the inmate must then appeal an adverse decision by the superintendent to the Central Office

Review Committee ("CORC") within seven days after receipt of the superintendent's response.

*See* N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5; *McGee*, 2018 WL 2045094, at *2.

### B.     Failure to Exhaust

Defendants argue that Plaintiff failed to exhaust his administrative remedies prior to

filing the instant lawsuit.  (ECF No. 58 ("D's Mem.") at 6-9.)  Specifically, Defendants claim

that "Plaintiff's allegation that he filed a grievance that was never responded to is not supported

by the record as no such grievance exists."  (D's Mem. at 7.)

Looking only at the complaints and documents submitted therewith, it appears that Plaintiff failed to exhaust.  The only grievance Plaintiff provides does not complain about any DOCCS employee's conduct on the date of the assault or about his medical care, but rather complains about the failure of anyone to help him file charges against the inmates who attacked him.  (IC at 21.)  Plaintiff's other statements regarding exhaustion are not only internally contradictory, but despite their detail, describe no appeal to CORC.  Even the communication to the Superintendent he describes relates to his desire to file charges against the inmates and does not complain about any DOCCS employee being responsible for the attack or depriving him of medical care.  (*Id.*)  His allegation that he exhausted at all three levels, (*id.* ¶ 42), is entirely conclusory.  This arguably is a case where the complaints clearly point to a failure to exhaust, *see McGee*, 2018 WL 2045094, at *2, but in light of Plaintiff's conclusory statement and because exhaustion need not be pleaded, I turn to Defendants' evidence.

Defendants' documents and declarations establish that Plaintiff did not exhaust the available administrative remedies.  (*See* Seguin Decl. ¶ 13; ECF No. 58-1 at 25-26; ECF No. 58-2 ("Hostettler Decl.") ¶¶ 9-10; ECF No. 58-3 ("Pickett Decl.") ¶ 6.)  First, affidavits from Kadie Hostettler, the IGP Supervisor at Attica, (Hostettler Decl. ¶ 1), and Melissa Pickett, the IGP Supervisor at Downstate, (Pickett Decl. ¶ 1), reflect that each conducted searches of the IGRC records at her respective facility and found that Plaintiff had not filed any grievance relating to the claims in this case.  (Hostettler Decl. ¶¶ 9-10; Pickett Decl. ¶ 6.)[5]  As Plaintiff was required

---

[5] Hostettler goes further and says Plaintiff has never filed a grievance at Attica relating to Downstate or Attica at all.  (Hostettler Decl. ¶ 10.)  If the document addressed to Inmate Grievance Supervisor D. Fuller, (IC at 21), is legitimate, Hostettler's representation in that regard would appear to be incorrect.  But as that document only raises grievances regarding property, programming and the failure of anyone to assist Plaintiff in bringing charges against

to file a grievance with the IGRC within twenty-one days of the alleged occurrence, Plaintiff has failed to exhaust his administrative remedies because he failed to file a grievance at all.  *See* N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(a)(1).

Even assuming that Plaintiff did file a grievance at either Downstate or Attica, as he alleges he did once he moved to Attica, (FAC ¶ 25), he has failed to comply with the three levels of the IGP.  *See* N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5.  The custodian of records maintained by CORC searched its database for records of appeals pertaining to Plaintiff, and found that "Plaintiff has not appealed any facility-level grievance determination to CORC for incidents relating to an assault, cover-up or inadequate medical care."  (Seguin Decl. ¶ 13; *see id.* ¶ 12; ECF No. 58-1 at 25-26.)

While Plaintiff alleges that once he moved to Attica he filed a grievance that was "ignored," (FAC ¶ 25), this alleged lack of response is not sufficient to overcome the exhaustion requirement.  "Even where an inmate receives no response to his initial level grievance, he is still required to file an appeal in order to satisfy the exhaustion requirement."  *Lashley v. Artuz*, No. 01-CV-11542, 2004 WL 1192090, at *2 (S.D.N.Y. May 27, 2004); *see* N.Y. Comp. Codes R. & Regs. Tit. 7, § 701.6(g)(2) (permitting inmate appeal if no timely response is received from IGRC); *Mena v. City of N.Y.*, No. 13-CV-2430, 2016 WL 3948100, at *5 (S.D.N.Y. July 19, 2016) ("[T]he law is well settled that the failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies.") (cleaned up).

---

Hardy and Watkins, it would remain correct that Plaintiff did not file any grievance relating to claims in this case.

Finally, while Plaintiff provides and/or describes several communications with offices and officials of DOCCS, (*see* IC at 19-21, 25-28; FAC ¶¶ 20, 26-27), they do not satisfy the procedural requirements of the IGP.  *See Zappulla v. Fischer*, No. 11-CV-6733, 2013 WL 1387033, at *1 (S.D.N.Y. Apr. 5, 2013) ("[I]nformal letters, oral conversations, and other communications outside the formal grievance and appeal process do not satisfy the exhaustion requirement.").  Indeed, the response that Plaintiff received from the Commission of Corrections on September 13, 2019 clearly put Plaintiff on notice that he needed to comply with DOCCS's grievance process, by explicitly referring to the "Department's grievance process" and suggesting to Plaintiff that he "file a grievance (Inmate Grievance Form # 2131) with the Inmate Grievance Resolution Committee."  (IC at 28; *see* FAC ¶ 20.)

The record is plain that Plaintiff did not exhaust his administrative remedies, and Plaintiff has provided nothing in response to Defendant's motion to create a genuine issue of material fact.  While he alleges in his complaints, in entirely conclusory fashion, that he fully exhausted, (IC ¶ 41; AC ¶ 31; SAC at 4; TAC ¶ 26; FAC ¶ 24), "[t]o withstand summary judgment, a plaintiff must offer more than conclusory allegations that he properly exhausted his administrative remedies."  *Wisdom v. Loiodice*, No. 17-CV-4837, 2020 WL 4431590, at *5 (S.D.N.Y. July 31, 2020).  In other words, "a plaintiff's bald assertions unsupported by evidence that he exhausted all available remedies are insufficient to overcome a motion for summary judgment, even for a *pro se* plaintiff."  *Id.* (cleaned up).[6]

_____

[6] Further, while limited discovery is typically conducted before granting summary judgment in the PLRA context, discovery is not necessary when, as here "the facts regarding plaintiff's efforts at exhaustion are not disputed, and it does not appear that any amount of discovery would change the outcome."  *Gottesfeld*, 2020 WL 1082590, at *7 (cleaned up).  Both parties have plainly provided whatever they have on the exhaustion issue, and Plaintiff has not disputed Defendants' evidence or suggested that he is in need of discovery on the issue.

Therefore, Plaintiff has failed to exhaust his administrative remedies.

**C.      Possible Exceptions to the Exhaustion Requirement**

Although the Supreme Court has deemed exhaustion mandatory, courts must consider the PLRA's "textual exception to mandatory exhaustion" – that is, whether administrative remedies were "available" to the prisoner. *Ross v. Blake*, 578 U.S. 632, 642 (2016).  The Supreme Court has identified three circumstances in which administrative remedies may be unavailable.  *See id.* at 643-45.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 643.  Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.*  Third, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.  "The Supreme Court noted that the above circumstances 'will not often arise' '[g]iven prisons' own incentives to maintain functioning remedial processes.'" *Amaker v. Lee*, No. 13-CV-5292, 2019 WL 1978612, at *4 (S.D.N.Y. May 3, 2019) (quoting *Ross*, 578 U.S. at 643).

First, Plaintiff has not shown that the grievance process "operates as a simple dead end." *Ross*, 578 U.S. at 643.  He has provided no facts suggesting that the IGP cannot and does produce results.  Even assuming that Plaintiff filed an initial grievance and it received no response, "this alone is insufficient to show that the IGRP acted as a mere dead end," especially "in light of the IGRP's built-in appeal mechanism, whereby inmates may directly proceed to the next level of review in the event of the DOC's failure to respond to a grievance." *Mena*, 2016 WL 3948100, at *4; *see Massey v. Sapp*, No. 19-CV-11902, 2021 WL 4461825, at *4 (S.D.N.Y.

Sept. 29, 2021) (receiving no response to previous grievance is insufficient to show grievance

procedure is dead end, and failing to appeal when initial grievance received no response

constitutes failure to exhaust).  Nor has Plaintiff pleaded any facts suggesting that the IGP is

unavailable to inmates generally.  *See White v. Veile*, 709 F. App'x 35, 38 (2d Cir. 2017)

(affirming summary judgment for failure to exhaust administrative remedies where plaintiff did

not "present[] any evidence about the outcomes in the grievance system in general" or "show[]

that prison officials are consistently unwilling to grant relief").

Second, Plaintiff cannot argue that the IGP is "opaque" given the clarity of the relevant

regulations.  *Ross*, 578 U.S. at 643.  "To meet this high bar, the administrative remedy must be

'essentially unknowable.'"  *Whittington v. Ponte*, No. 16-CV-1152, 2020 WL 2750372, at *8

(S.D.N.Y. May 27, 2020).  That is, "some mechanism exists to provide relief, but no ordinary

prisoner can discern or navigate it."  *Williams v. Priatno*, 829 F.3d 118, 123 (2d Cir. 2016)

(cleaned up).  Regulations are "so opaque" as to be unusable if they "simply do not contemplate

the situation in which [the grievant] found himself, making it practically impossible for him to

ascertain whether and how he could pursue his grievance."  *Id.* at 124.  The IGP makes clear that

if a plaintiff does not receive a response within the prescribed time frame, he may still appeal.

*See* N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g)(2) ("[M]atters not decided within the time

limits may be appealed to the next step.").  It thus plainly contemplates the situation here, and as

such there is nothing "opaque" about what Plaintiff should have done.  *See Chin v. Burnstein*,

No. 15-CV-7860, 2017 WL 1169670, at *9 (S.D.NY. Mar. 28, 2017) ("The IGP provides a clear

process, including defined deadlines, as to how and when to file and appeal grievances at the

various stages of the IGP, and allows a grievant to bypass levels of review when a grievance has

not received a timely decision."); *Shaw v. Ortiz*, No. 15-CV-8964, 2016 WL 7410722, at *6

(S.D.N.Y. Dec. 21, 2016) ("[T]he IGP contemplates the circumstances in which Plaintiff found himself because the failure to render a timely decision at a lower level does not relieve a prisoner of the obligation to appeal to the next level."); *Medina v. Kaplan*, No. 16-CV-7223, 2018 WL 797330, at *5 (S.D.N.Y. Feb. 8, 2018) ("[T]he IGP does not embody a process which is incapable of use to obtain relief.  Plaintiff has offered no facts which would indicate that the IGP is so opaque that it becomes, practically speaking, incapable of use such that no ordinary prisoner could discern or navigate it.") (cleaned up).  Because the Court is satisfied that the grievance process is sufficiently clear, Plaintiff is unable to establish that the second *Ross* exception to exhaustion applies.

Third, Plaintiff has failed to show that prison administrators prevented him from exhausting his claims through "machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644.  Plaintiff alleges that Williams wanted people to think Plaintiff had harmed himself, (FAC ¶ 15), and that Edwards said that seeking protective custody would make Plaintiff a target, (*id* ¶ 19), but neither of those statements rise to the required level.  Even if they could somehow be interpreted as threats, there is no indication that they related to the grievance process.  *See Medina*, 2018 WL 797330, at *5 ("There is no allegation that the threat was even related to her grievance and ability to exhaust available administrative relief.")  Plaintiff has thus failed to show that the prison administrators prevented him from exhausting his claims through "machination, misrepresentation, or intimidation." *Compare Lucente v. County of Suffolk*, 980 F.3d 284, 312 (2d Cir. 2020) (act "wholly unrelated to the grievance process or any attempt to intimidate an inmate from reporting abuse, does not provide grounds for excusing [plaintiff's] failure to comply with the PLRA's exhaustion requirement"), *with Wing v. Myers*, No. 18-CV-11056, 2019 WL 6732967, at *5 (S.D.N.Y. Dec. 11, 2019) (denying a motion to dismiss where

the plaintiff "received a specific threat that appeared to be related to the . . . attack, as he was allegedly told that he would get beat up 'again' if he filed a grievance"), *and Perkins v. Perez*, No. 17-CV-1341, 2019 WL 1244495, at \*8-9 (S.D.N.Y. Mar. 18, 2019) (denying motion to dismiss where complaint included allegation of threat by corrections officer that directly referred to grievance process).  Moreover, Plaintiff was transferred out of Downstate, and thus away from Williams and Edwards, two days after the incident, leaving plenty of time to file a grievance from Attica.  Indeed, Plaintiff alleges that he did file a grievance in Attica, showing that any attempts to threaten or intimidate him did not in fact make the grievance process "unavailable" to him.  Therefore, Plaintiff is unable to establish that the third *Ross* exception to exhaustion applies.

Because Plaintiff did not exhaust his administrative remedies and does not meet any of the exceptions to that requirement, his claims are dismissed.

### D.    Substantive Claims

Many of Plaintiff's claims would not survive a motion to dismiss even if Plaintiff had fully exhausted.  I address them briefly.

Plaintiff has failed to show the personal involvement of Defendants Burnett and Malvarosa.  *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).  That Burnett did not investigate the assault or discipline those involved after the fact cannot have caused Plaintiff's injuries, and merely being in the chain of command does not suffice to render one liable.  *See, e.g.*, *Banks v. Annucci*, 48 F. Supp. 3d 394, 416 (N.D.N.Y. 2004).  Likewise, that Dr. Malvarosa was the supervisor of those who allegedly failed to provide adequate medical care does not sufficiently plead his personal involvement.  *See, e.g.*, *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003).

Plaintiff alleges that Pavez and Edwards thwarted his efforts to be placed in protective custody after the attack, but he has not alleged that he was thereafter "attacked or injured as a result of being denied protective custody status, or even that other inmates or correctional officers made significant threats against him." *Best v. City of N.Y.*, No. 11-CV-4475, 2012 WL 5458054, at *7 (S.D.N.Y. Nov. 8, 2021); *see Livingston v. Hoffnagle*, No. 19-CV-0353, 2019 WL 7500501, at *7 (N.D.N.Y. Nov. 8, 2019). In fact, Plaintiff was moved to a separate complex right after the attack, and moved to another facility two days later. (FAC ¶¶ 19-20.) Nor has Plaintiff provided facts suggesting that Pavel or Edwards knew he wanted to be in protective custody before the attack or were aware of any risk to him. *See, e.g.*, *Warren v. Marcy RMHU Corr. Facility*, No. 18-CV-852, 2019 WL 111043, at *1 (N.D.N.Y. Jan. 4, 2019). He has not even alleged that his desire for protective custody had anything to do with Hardy or Watkins.

Plaintiff also alleges that Sergeant Pavez refused to permit Plaintiff to fill out paperwork or press charges against Hardy and Watkins, (FAC ¶ 16), but there is no constitutional right to such assistance, or even a "constitutional right to be free from the cover-up of a past constitutional violation," *Lewis v. Havernack*, No. 12-CV-31, 2013 WL 1294606, at *12 (N.D.N.Y. Mar. 28, 2013), *report and recommendation adopted*, 2013 WL 1294592 (N.D.N.Y. Mar. 28, 2013); *see Bourguignon v. Lantz*, No. 05-CV-245, 2006 WL 214009, at *7 (D. Conn. Jan. 25, 2006) ("[A]ny allegations that defendants . . . would not assist [the *pro se* plaintiff] in pressing charges against the inmates involved in the altercation lack legal merit and fail to state a claim cognizable in a section 1983 action.") (cleaned up). And Plaintiff was ultimately informed of how to contact the state police, who apparently pursued the matter.

To the extent Plaintiff alleges that Sergeant Pavez violated unspecified DOCCS policies, (FAC ¶¶ 15-18), his claim must also be dismissed because "the law is settled that the failure to

follow a [DOCCS] Directive or prison regulation does not give rise to a federal constitutional claim." *Rivera v. Wohlrab*, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002).

To the extent Plaintiff alleges that Edwards verbally harassed or threatened Plaintiff,[7] "verbal harassment or profanity alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and is therefore not actionable." *Myers v. City of N.Y.*, No. 11-CV-8525, 2012 WL 3776707, at *9 (S.D.N.Y. Aug. 29, 2012) (cleaned up); *see Cole v. Fischer*, 379 F. App'x 40, 43 (2d Cir. 2010) (summary order) ("[V]erbal harassment, standing alone, does not amount to a constitutional deprivation."); *Bey v. Griffin*, No. 16-CV-3807, 2017 WL 5991791, at *3-4 (S.D.N.Y. Dec. 1, 2017) (dismissing verbal harassment claims where a correction officer told the plaintiff "not to move, or he would 'beat him up'" and where other correction officers "threatened to punch plaintiff if he did not remove his clothes").

### E.      State Law Claims

The "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction where all federal-law claims are eliminated before trial. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  Having determined that the only claims over which this Court has original jurisdiction should be dismissed, and having considered the factors set forth in *Cohill*, I decline to exercise supplemental jurisdiction over any state-law claims Plaintiff may have been attempting to assert. *See id.* (citing 28 U.S.C. § 1367(c)(3)).

---

[7] Edwards' statement that "word would travel quick and you will be assaulted again," (FAC ¶ 19), seems more like advice than a threat.

F.      **Leave to Amend**

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R.

Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to

amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (cleaned up).  "Leave to amend, though

liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by

amendments previously allowed'" or "'futility of amendment,'" among other reasons.  *Ruotolo v.

City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182

(1962)).

Plaintiff has already amended four times, (AC, SAC, TAC, FAC), after having the benefit

of a pre-motion letter from Defendants outlining their proposed grounds for dismissal, (ECF No.

53), and the discussion at the November 12, 2021 pre-motion conference, (*see* Minute Entry

dated Nov. 12, 2021).  In general, a plaintiff's failure to fix deficiencies in the previous pleading,

after being provided notice of them, is alone sufficient ground to deny leave to amend.  *See Nat'l

Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When

a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has

no right to a second amendment even if the proposed second amended complaint in fact cures the

defects of the first.  Simply put, a busy district court need not allow itself to be imposed upon by

the presentation of theories *seriatim*.") (cleaned up); *In re Eaton Vance Mut. Funds Fee Litig.*,

380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have

had two opportunities to cure the defects in their complaints, including a procedure through

which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by

the defendants and given a chance to amend their Consolidated Amended Complaint," and

"plaintiffs have not submitted a proposed amended complaint that would cure these pleading

defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (cleaned up).

Moreover, Plaintiff has not asked to amend again or otherwise suggested that he is in possession of facts that would cure the deficiencies identified in this opinion. *See TechnoMarine SA v. Giftports, Inc*., 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to a different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make the complaint viable and plaintiffs did not request leave to amend). Indeed, "[t]he problem with [Plaintiff's] causes of action is substantive," and "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Accordingly, the Court declines to grant leave to amend *sua sponte*.

## IV.   **CONCLUSION**

For the reasons stated above, Defendants' motion for summary judgment is GRANTED and Plaintiff's federal claims are dismissed with prejudice. His state claims are dismissed without prejudice. The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 57), enter judgment for Defendants in accordance with this decision, and close the case.

**SO ORDERED.**

Dated:  June 29, 2022
      White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.